1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9   Pedro G. Montalvo, et al.,                    No. CV-12-02297-PHX-JAT

10                     Plaintiffs,                 **ORDER**

11  v.

12  American Family Mutual Insurance
    Company, et al.,
13
                       Defendants.
14

15          Pending before the Court is Defendant American Family Mutual Insurance

16  Company ("American Family")'s Motion for Partial Summary Judgment (Doc. 48). The

17  Court now rules on the motion.

18  **I.     Background**

19          The facts of this case, construed in the light most favorable to Plaintiffs Pedro G.

20  Montalvo and Rihilma S. Montalvo, are as follows.[1] Plaintiffs purchased a homeowners

21  _____

22          [1] On a motion for summary judgment, the Court construes any disputed facts in
    the light most favorable to the non-moving party. *See Ellison v. Robertson*, 357 F.3d
23  1072, 1075 (9th Cir. 2004).

24          In considering the facts of this case, the Court encountered numerous issues
    concerning the quality of briefing by counsel for both parties. Defendant's statement of
25  facts contains erroneous references to the record, *see, e.g.*, (Doc. 49 ¶ 20) (erroneous cite
    to Exhibit 8), fails to include pinpoint citations to documents in the record, *see, e.g.*, (*id.* ¶
26  2) (failure to cite the specific page of the policy), and misquotes its own policy, *see, e.g.*,
    (*id.* ¶ 3) (misstating "appraisal" instead of "arbitration"). Plaintiffs' controverting
27  statement of facts misstates the evidence, *see, e.g.*, (Doc. 55 ¶ 14) (misinterpreting
    Getty's e-mail), improperly contains legal arguments, *see, e.g.*, (*id.* ¶¶ 26, 30), misstates
28  Plaintiffs' names, *see id.* at 10 ("Attorneys for Plaintiff Tropitoga Circle Condominium
    Homeowners Association"), and their response is both missing citations to the record,
    *see, e.g.*, (Doc. 54 at 2:8-24), and riddled with grammatical errors, *see, e.g.*, (*id.* at 3:3,

insurance policy (the "Policy") from American Family. (Doc. 49-1 at 3). The Policy covers "risks of accidental direct physical loss to property described in Coverage A – Dwelling and Dwelling Extension, unless the loss is excluded in this policy." (*Id.* at 9). Excluded losses include "faulty, inadequate, or defective . . . construction, renovation, repair, remodeling or renovation; . . . materials used in construction, reconstruction, repair, remodeling or renovation; . . . design, workmanship, or specifications." (*Id.* at 11). The Policy also specifies the timing of payment for losses as follows:

> **Loss Payment.** We will adjust all losses with you. We will pay you unless some other party is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your properly completed proof of loss and:
>
>     a.    we reach agreement with you;
>
>     b.    there is an entry of a final judgment; or
>
>     c.    there is a filing of an arbitration award with us.

(*Id.* at 12) (emphasis omitted).

On October 5, 2010, a hail storm occurred in the Phoenix metropolitan area. On August 17, 2011, Plaintiffs first reported a claim to American Family for damage caused by this hail storm. (Doc. 49-1 at 31). American Family's claim notes report the description of the claim as "roof damage to the tiles on the roof, swimming pool damage, siding damageg [sic]." (*Id.*)

American Family assigned the claim to Pacesetter Claims Service, which employed Cheryl Batstone as a field adjuster. (*Id.* at 62). Ms. Batstone began her career as an adjuster in March 2011; the October 2010 hail storm was the first storm for which she had adjusted the subsequent insurance claims. (Doc. 55-2 at 12:19-13:11). On August 24, 2011, Ms. Batstone inspected Plaintiffs' property and identified storm-related damage to window screens and two air conditioning units. (Doc. 49-1 at 62). Plaintiffs expressed

---

3:14, 7:14). Where Plaintiffs have disputed a fact but offered no evidence, such as at Doc. 55 ¶ 29, the Court has searched for Plaintiffs' assertion in American Family's evidence but otherwise cannot conclude a *genuine* dispute of fact exists. Fed. R. Civ. P. 56(e); LRCiv 56.1(b).

to Ms. Batstone that their adjuster had found additional property damage. (Doc. 55-2 at 102:14-22). Nevertheless, Ms. Batstone estimated repair costs of $546.94 for the damage that she had identified, which did not exceed Plaintiffs' $2,500 deductible. (Doc. 49-1 at 62). On August 28, 2011, American Family notified Plaintiffs via letter that "no payment can be issued at this time." (*Id.* at 73).

On October 4, 2011, Plaintiffs called American Family and requested an extension of time with respect to their claim. American Family declined to grant an extension. (*Id.* at 55-56). On December 15, 2011, Plaintiffs, through counsel, sent a demand letter to American Family accusing American Family of acting in bad faith with respect to their claim. (*Id.* at 75). In the letter, Plaintiffs asserted that their independent adjuster had found substantial damage to the property totaling $126,642.68 and threatened to file a lawsuit in fifteen days if American Family did not settle for $145,000. (*Id.* at 77, 79).

In response to Plaintiffs' letter, American Family sent two contractors to Plaintiffs' property to investigate the damage. (*Id.* at 54). During Getty Engineering Services ("Getty")'s January 10, 2012 inspection of the property, Plaintiff Pedro Montalvo and Plaintiffs' counsel's representative Doug Austin were present but gave only limited answers or withheld answers to Getty's background questions regarding the property.[2] (*Id.* at 89; Doc. 55-3 at 2). On January 12, 2012, Getty sent a list of background questions to Plaintiffs' counsel to be answered by Mr. Montalvo. (Doc. 49-1 at 113-14). Plaintiffs' counsel promised to "do [his] best" to answer the questions in a timely manner. (*Id.* at 117).

Following the report of American Family's air conditioning contractor that one air conditioning unit needed to have its condenser fins repaired and the other two units needed to be replaced, American Family paid Plaintiffs $10,798.15 less recoverable

---

[2] Although Plaintiffs claim that Mr. Montalvo was not present during the inspection, (Doc. 55 ¶ 14), the evidence clearly shows that the inspection occurred from 1 p.m. to 4:45 p.m. with Mr. Montalvo arriving sometime after 3:30 p.m. when Getty's assistant structural engineer, Mike Hennessy, was conducting the inspection. (Doc. 55-3 at 2). *See also* (Doc. 49-1 at 93) ("Mr. Montalvo was also present for approximately the last 10 minutes of the inspection.").

depreciation and deductible, for a total of $5,489.15. (Doc. 49 ¶¶ 18-19; Doc. 55 ¶¶ 18-19).

On February 13, 2012, Getty informed Plaintiffs' counsel that Mr. Montalvo's failure to respond to the background questions regarding the property was delaying Getty's report. (Doc. 49-1 at 133). On March 26, 2012, American Family sent Plaintiffs' counsel a letter asking for the background information. (*Id.* at 135). Plaintiffs answered three days later. (Doc. 49 ¶ 22; Doc. 55 ¶ 22). Getty issued its report on April 30, which resulted in American Family paying Plaintiffs $17,413.27 less recoverable depreciation, deductible, and credit for previous payments, for a total of $3,402.42. (Doc. 49 ¶¶ 23-24; Doc. 55 ¶¶ 23-24).

American Family sent Getty's report to Plaintiffs' counsel along with an explanation as to the adjustment of Plaintiffs' claim based upon Getty's findings. (Doc. 49 ¶ 26; Doc. 55 ¶ 26). American Family's letter stated that it was covering roof tiles with "cosmetic edge chip damage," those damaged "by foot fall," but not those damaged due to manufacturing defects or improper installation. (Doc. 49-1 at 148). American Family declined to cover the windows because those damages were, according to American Family, due to a ladder and gunfire. (*Id.* at 149). American Family declined to cover the pool deck because it found no hail damage, only normal cracks and wear and tear. (*Id.*) American Family covered hail damage to the inside pool surface in one location and declined to cover the other damage to the pool surface as non-hail damage. (*Id.* at 150). American Family covered the gutter damage and some stucco repair but not for cracked and smashed areas damaged by blunt force objects or faulty construction. (*Id.* at 151). American Family also covered window screens. (*Id.* at 152).

Plaintiffs subsequently sent American Family a second demand letter reiterating the same $145,000 demand. (*Id.* at 155). American Family responded that it believed it had properly adjusted Plaintiffs' claim, and offered to take the claim to appraisal. (*Id.* at 167). On September 28, 2012, Plaintiffs filed this lawsuit. (Doc. 1-1).

## II.     Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**III.    Plaintiffs' Expert Disclosures**

American Family asserts that Plaintiffs have not disclosed any admissible material evidence disputing Getty and Falcon Air's reports, and therefore there is no question of fact for the jury as to whether American Family owes Plaintiffs additional amounts under the Policy. (Doc. 48 at 9). Specifically, American Family argues that two pieces of Plaintiffs' evidence are inadmissible: (1) the insurance estimate purportedly authored by Austin Insurance Services and (2) the report of RB Engineering (the "RB Report"). (*Id.* at 10).

**A.    Background**

Plaintiffs' initial demand letter to American Family stated that Plaintiffs' counsel had sent an independent adjuster to Plaintiffs' property and that "[a] copy of this independent adjuster's report is enclosed." (Doc. 49-1 at 75). The enclosed report was captioned as "Statement of Loss" and listed the adjuster as David Chami (Plaintiffs' counsel), with the insurance company as "Price Law Group, APC." (*Id.* at 78). The report also listed the "Claim Rep." as "David Chami" and the "Contractor Company" as "Price Law Group LLC." (*Id.* at 80).

Plaintiffs' initial disclosure statement included a complete copy of this estimate (the "Loss Estimate"), which Plaintiffs identified as "Report of Doug Settell, of Austin Insurance Services, dated October 1, 2011." (*Id.* at 175). The complete estimate includes thirty-nine pages of photographs of Plaintiffs' property, with each photo listed as "Taken By: David Chami." *See* (*id.* at 191-229). Plaintiffs also in their initial disclosure statement listed Doug Settell as a witness expected to be called at trial. (*Id.* at 173).

With respect to the RB Report, Plaintiffs disclosed this report for the first time in their first supplemental disclosure statement. (*Id.* at 231-32). The RB Report is an engineering report provided by RB Engineering, Inc. and concludes there is hail damage to Plaintiffs' property. (*Id.* at 235-38). Plaintiffs did not disclose any other information concerning the report or list that the report's author, Ron Bittler, would testify as a witness.

1    The Court's Rule 16 Scheduling Order (Doc. 14) ordered that all expert

2    disclosures were due on August 9, 2013. (Doc. 14 at 2). All responsive expert disclosures

3    were due on September 13, 2013. All rebuttal expert disclosures were due October 11,

4    2013. The discovery cut-off deadline was December 20, 2013. (*Id.*)

5        **B.      Rule 26(a) Standard**

6        Federal Rule of Civil Procedure ("Rule") 26(a)(2)(A) requires a party to disclose

7    the identity of any expert witness it may use at trial. Unless otherwise ordered, the

8    disclosure must include a written report prepared by the witness. Fed. R. Civ. P.

9    26(a)(2)(B). The parties are required to make this disclosure at the time that the court

10   orders. *Id.* 26(a)(2)(D). When a party fails to make a timely disclosure required by Rule

11   26(a), "the party is not allowed to use that information or witness to supply evidence on a

12   motion, at a hearing, or at a trial" unless it proves that its failure was "substantially

13   justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Torres v. Los Angeles*, 548 F.3d 1197,

14   1213 (9th Cir. 2008).

15       The Ninth Circuit Court of Appeals ("Court of Appeals") has enumerated four

16   factors in determining "whether a violation of a discovery deadline is justified or

17   harmless: . . . (1) prejudice or surprise to the party against whom the evidence is offered;

18   (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the

19   trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."

20   *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (citing *David v.*

21   *Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

22       If a court concludes that a discovery deadline violation is not substantially justified

23   or harmless, it has "particularly wide latitude" in its discretion to "issue sanctions under

24   Rule 37(c)(1)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th

25   Cir. 2001). Rule 37(c) is intended to provide a "self-executing," "automatic sanction

26   provid[ing] a strong inducement for disclosure of material," Fed. R. Civ. P. 37 advisory

27   committee's note (1993). Thus, the rule provides for the automatic exclusion of the

28   testimony of an untimely disclosed expert witness. *See* Fed. R. Civ. P. 37(c)(1); *Yeti by*

*Molly*, 259 F.3d at 1106 (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001)).

### C.    Expert Testimony Requirements

Federal Rule of Evidence ("FRE") 702 permits a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness not testifying under FRE 702 may offer opinion testimony only if such testimony is rationally based on the witness's perception, "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

### D.    Analysis

#### 1.    Plaintiffs' Estimate

The parties first dispute whether the author of the Loss Estimate is David Chami, Plaintiffs' counsel, or Doug Settell of Austin Insurance Services. *See* (Doc. 48 at 10-11; Doc. 54 at 7). Although Mr. Settell's name is nowhere to be found in the estimate and every reference within the corners of the document points to Mr. Chami as author, because Mr. Settell later signed a declaration stating that he authored Plaintiffs' Estimate, (Doc. 49-1 at 257), the Court will assume for purposes of this motion that Mr. Settell is the author.

The next issue is whether Mr. Settell is a testifying expert witness or a testifying lay witness. Plaintiffs contend that "Mr. Settell is not an expert nor does he need to be to discuss the cost to repair the damages at the [sic] Plaintiffs' home." (Doc. 54 at 8). Plaintiffs thus argue that because Mr. Settell would not present testimony at trial under FRE 702, 703, or 705, the expert report requirements of Rule 26(a)(2)(B) do not apply. However, the Court finds that Mr. Settell's testimony would be within the scope of FRE 702.

1    Mr. Settell's opinion testimony as to the cost of repairing Plaintiffs' house requires

2    him to give his expert opinion as to the cost of such repairs. His testimony expresses an

3    opinion as to the estimated cost and is based upon his experience as an insurance adjuster,

4    as he attests in his declaration. *See* (Doc. 49-1 at 257) ("I have worked as both an

5    insurance staff adjuster, insurance claims manager and independent insurance adjuster for

6    over 10 years and I am qualified to inspect for wind and hail related damage to

7    property."). Mr. Settell has no personal knowledge of the cost because the repairs have

8    not yet been completed; if Plaintiffs had repaired their house and Mr. Settell had personal

9    knowledge of those payments, he would be qualified to testify as a fact witness within a

10   matter of his personal knowledge. Indeed, lay witnesses may testify to "particularized

11   knowledge by virtue of [their] experience[s]" even if the subject matter is "specialized or

12   technical[,] because the testimony is based upon the layperson's personal knowledge

13   rather than on specialized knowledge within the scope of Rule 702." *Donlin v. Philips*

14   *Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009).

15   In this case, however, Mr. Settell's testimony regarding the estimate repair costs

16   falls within the scope of specialized knowledge. Plaintiffs may not attempt to evade FRE

17   702's requirements "through the simple expedient of proffering an expert in lay witness

18   clothing." Fed. R. Evid. 701 advisory committee notes to 2000 amendments. Although

19   Plaintiffs offer numerous decisions of Arizona state courts in an attempt to argue to the

20   contrary, (Doc. 54 at 8), none of these decisions apply the *Federal* Rules of Civil

21   Procedure. In conclusion, Mr. Settell's proffered testimony is expert testimony within the

22   scope of FRE 702.[3]

23   Because Mr. Settell's testimony is within the scope of FRE 702, Plaintiffs were

24   required to disclose a written report pursuant to Rule 26(a)(2)(B). Their failure to do so is

25   a violation of the discovery rules.

26   ─────────────────

27   [3] Plaintiffs also argue that Mr. Settell's testimony is similar to that of American
     Family's adjusters and Plaintiffs allege American Family has not disclosed their adjusters

28   as experts. (Doc. 54 at 9). Plaintiffs do not support this assertion with citations to the
     record and even if true, this is an issue for Plaintiffs to raise in the first instance rather
     than as a defense to failure to comply with the disclosure rules.

### 2.    The RB Report

With respect to the RB Report, Plaintiffs do not dispute that they failed to comply with Rule 26(a)(2)(A) by failing to identify Ron Bittler as a witness presenting expert testimony. (Doc. 54 at 10).

### 3.    Failure to Comply with Rule 26

Plaintiffs argue that their failures to comply with Rule 26 are harmless because American Family was aware of the reports and had notice of the subject of the experts' testimony. (*Id.* at 8, 10). The Court concludes Plaintiffs' failures were not harmless.

Turning to the first factor enumerated in *Lanard Toys*, the Court finds Plaintiffs' non-disclosure created substantial prejudice to American Family. At the time that American Family's responsive expert disclosures were due, Plaintiff had disclosed only that Mr. Settell authored the Loss Estimate and that he had some experience as an adjuster. *See* (Doc. 49-1 at 257). This disclosure was grossly inadequate, *see* Fed. R. Civ. P. 26(a)(2)(B), and placed American Family in the prejudicial position of having to make any responsive expert disclosures without notice as to the specifics of Mr. Settell's opinion. Plaintiffs' disclosure of the Loss Estimate failed to state with any specificity the information required by Rule 26(a)(2)(B)(i)-(vi). Although it can be inferred from the Loss Estimate that Mr. Settell will express the opinion that the repair estimate contained in that report is reasonable, the disclosure does not specify the full extent of the data relied upon in reaching those opinions, any exhibits, Mr. Settell's publications authored in the previous ten years, a list of cases in which he has served as an expert, and his compensation, as required. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

Plaintiffs' disclosure with respect to Mr. Bittler and the RB Report is also procedurally defective. Plaintiffs never disclosed that Mr. Bittler would be a testifying witness and thus American Family never deposed him. Plaintiffs have not disclosed any information about Mr. Bittler other than the contents of the RB Report.

In *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011), the plaintiff disclosed her non-medical expert reports four-and-a-half months late, after

- 10 -

1  the defendant's deadline for disclosing experts had also expired. 644 F.3d at 826-27. The

2  Court precluded the experts from testifying in the plaintiff's case-in-chief. *Id.* at 827. The

3  Court of Appeals agreed that the nondisclosure created "obvious prejudice" because the

4  defendant had made "decisions regarding defense experts under the belief that [the

5  plaintiff's] non-medical experts would not be testifying in her case-in-chief" and the

6  defendant's experts had "developed their opinions and wrote their reports without

7  knowing the scope of [the plaintiff's] experts' opinions."[4] *Id.* at 827.

8      Here, like the defendant in *Goodman*, American Family was unable to determine

9  from Plaintiffs' inadequate disclosures whether it needed to retain experts to rebut Mr.

10  Bittler's and Mr. Settell's testimony. Plaintiffs argue that American Family did not need

11  to know the substance of this testimony because American Family was aware of the

12  contents of the Loss Estimate and the RB Report. (Doc. 54 at 8, 10). Plaintiffs also argue

13  that, in effect, American Family suffered no prejudice because even without Plaintiffs'

14  disclosures, American Family had "already retained an [e]ngineer and named him as a

15  testifying expert." (*Id.* at 10). But Plaintiffs do not get to unilaterally determine whether

16  the other party suffers prejudice as a result of non-disclosure.

17      This is not a case where Plaintiffs have substantially complied with the rule but a

18  minor, technical failing (such as the inadvertent failure to disclose an exhibit that will be

19  used to summarize the expert opinions) is at issue. Plaintiffs have clearly failed to comply

20  with the basics of the rule, and their attempt to downplay the significance of this failure

21  to comply by speculating as to American Family's prejudice (or lack thereof) is

22  unavailing. The Court has previously rejected such attempts to circumvent the clear

23  mandate of Rule 26, and will do so again. *See Cable v. City of Phoenix*, 2013 WL

24  6532023, at *5 (D. Ariz. Dec. 13, 2013). As the Court remarked in *Cable*, "[t]he purpose

25  of the expert disclosure rule is to 'provide opposing parties reasonable opportunity to

---

27      [4] Although the Court of Appeals agreed with the Court on this point, it nonetheless
reversed on a separate disclosure issue, concluding that the plaintiff's late disclosure of
28  her treating physicians' expert reports would be permitted because the scope of a treating
physician's written report requirement was unsettled prior to the *Goodman* case. 644 F.3d
at 826.

prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Id.* (quoting *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (citation omitted)). Plaintiffs' failure to disclose its expert reports deprived American Family of this reasonable opportunity, substantially prejudicing it.

As to the second factor, the ability of American Family to cure the prejudice, the Court finds this factor also weighs strongly against Plaintiffs. Plaintiffs still have not disclosed the required expert reports even after the discovery deadlines expired. Moreover, as in *Cable*, all of the disclosure deadlines have expired and the instant motion for summary judgment is pending. American Family has no opportunity to cure the prejudice at this late stage.

Plaintiffs offer no argument concerning the third *Lanard Toys* factor, the likelihood of disruption of the trial. However, the Court's Rule 16 Scheduling Order warned the parties that "because the deadlines set forth herein will trigger setting a trial date, the Court deems these deadlines to be the equivalent of a firm trial date." (Doc. 14 at 6). *See also Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2004) ("If [the plaintiff] had been permitted to disregard the deadline for identifying expert witnesses, the rest of the schedule laid out by the court months in advance, and understood by the parties, would have to have been altered as well. Disruption to the schedule of the court and other parties in that manner is not harmless."). This factor weighs in favor of American Family because Plaintiffs have not shown that they intend to disclose the Rule 26 reports, even untimely. Cross-examining Plaintiffs' experts at trial without a properly disclosed expert report would be highly disruptive to the trial process.

Finally, the fourth factor asks the Court to consider the bad faith or willfulness involved in not timely disclosing the expert reports. The Court finds no evidence that Plaintiffs initially acted in bad faith or that their initial failure to disclose was willful. However, Plaintiffs are unrepentant and have not disclosed the expert reports, even untimely, in an effort to mitigate their failings. After a certain amount of time elapses, an

inadvertent failure to comply with Rule 26 becomes willful by virtue of the noncompliant party's knowledge of its violation and its continual, knowing refusal to attempt to remedy its violation. In this case, Plaintiffs had every opportunity to request an extension of time or otherwise bring problems to the Court's attention. This they failed to do.[5]

The Court concludes that exclusion of Mr. Bittler's and Mr. Settell's testimony is the appropriate sanction for Plaintiffs' failure to disclose as required under Rule 26(a). *See* Fed. R. Civ. P. 37(c)(1); *cf. Quevado v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (upholding exclusion of expert testimony when the plaintiff tardily identified the expert and disclosed the expert's report one-and-a-half months later along with his opposition to the defendant's motion for summary judgment). Accordingly, the Court will not consider this testimony in ruling on American Family's motion for summary judgment.

**IV.   Breach of Contract Claim**

American Family moves for summary judgment on Plaintiffs' breach of contract claim. (Doc. 48 at 1). American Family's first argument is that because the Policy specifies that payment for losses is to be made upon the occurrence of any of three conditions (agreement with the insured, entry of a final judgment, or filing of an arbitration award) and none of these conditions has yet occurred, American Family's obligation to pay has not yet arisen. (*Id.* at 6-7). The clear purpose of the loss payment provision of the Policy is to specify the final timing of payment once the amount of a loss is settled; in other words, the provision tells the insured when it can expect the check to be in the mail. The answer is within thirty days. *See* (Doc. 49-1 at 12) ("Loss will be payable 30 days after . . . .").

The timing of payment is unrelated to American Family's obligation to pay Plaintiffs for covered property damage, which arises upon the occurrence of such damage

---

[5] The Court notes Plaintiffs requested, twenty days after the deadline expired, an extension of time to disclose expert reports. (Doc. 35). But Plaintiffs moved only to extend the deadline so that they could disclose an additional expert. *See* (*id.* at 3-4). Plaintiffs did not attempt to correct their deficiencies with respect to Mr. Bittler and Mr. Settell. The Court denied this motion. (Doc. 39).

1    and proper notification to American Family. *See* (*id.* at 13) ("What You Must Do in Case
2    of Loss"). Under American Family's proposed interpretation of the loss payment
3    provision, American Family could unilaterally defeat its obligations merely by choosing
4    not to agree to settle a claim. This interpretation is unreasonable.

5         American Family next argues that Plaintiffs have failed to identify the policy
6    provisions that American Family allegedly breached. (Doc. 56 at 1). American Family
7    claims that "a disagreement about the scope and cost of repair does not mean American
8    Family breached the contract." (*Id.*) But American Family has a contractual obligation
9    under the Policy to "cover risks of accidental direct physical loss" to covered property,
10   (Doc. 49-1 at 9), subject to exclusions for, among other things, construction defects or
11   faulty materials. Here, the parties dispute whether the damage to Plaintiffs' property was
12   caused by hail, a covered cause of loss. The outcome of this factual question determines
13   whether American Family is obligated under the Policy to pay for Plaintiffs' damages
14   and whether American Family breached its contractual obligation by failing to make such
15   payment.

16        Because a question of fact remains for the jury, the Court will not grant summary
17   judgment on Plaintiffs' claim for breach of contract.[6]

18   **V.    Bad Faith Claim**

19        American Family moves for summary judgment on Plaintiffs' claim for breach of
20   the implied covenant of good faith and fair dealing. (Doc. 48 at 1).

21

22   _____

23        [6] American Family labels its motion as a motion for partial summary judgment on
24   the theory that if Plaintiffs' breach of contract and bad faith claims were dismissed, the
     parties could nonetheless proceed to determine the amount American Family owes on the
     claim. (Doc. 48 at 1). There can be no such thing as non-breaching contract damages. At
25   trial, if Plaintiffs establish that American Family's liability on Plaintiffs' claim exceeds
     what American Family has paid to date, American Family has breached the contract. If
26   Plaintiffs are unsuccessful in making this showing, American Family has not breached
     the contract.
27
          American Family's motion cannot be a motion for partial summary judgment
28   because if granted it would dispose of all of Plaintiffs' claims in this case. Thus, the
     Court treats it as a motion for summary judgment.

- 14 -

1

    **A.**    **Legal Standard**

2        "The tort of bad faith arises when the insurer 'intentionally denies, fails to process

3    or pay a claim without a reasonable basis.'" *Zilisch v. State Farm Mut. Auto. Ins. Co.*,

4    995 P.2d 276, 279-80 ¶ 20 (Ariz. 2000) (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 624

5    P.2d 866, 868 (1981)). The tort recognizes that "in buying insurance[,] an insured usually

6    does not seek to realize a commercial advantage but, instead, seeks protection and

7    security from economic catastrophe." *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz.

8    1986). However, "[b]ecause of the disparity in bargaining power and the nature of the

9    contract, the insurer receives both premium and control." *Id.*

10        In the case of first-party insurance, "the insurer sets the conditions for both

11    presentment and payment of claims." *Id.* This dual role gives the insurer "an almost

12    adjudicatory responsibility." *Id.* "Although the insured is not without remedies if he

13    disagrees with the insurer, the very invocation of those remedies detracts significantly

14    from the protection or security which was the object of the transaction." *Id.* Thus, the

15    contract between insurer and insured gives rise to the insurer's obligation "implicit in the

16    contract and the relationship . . . to play fairly with its insured." *Id.*; *see also Zilisch*, 995

17    P.2d 279-80 ¶ 20 (an insurer owes its insured duties of equal consideration, fairness, and

18    honesty). Accordingly, an insurer may be liable for bad faith even if it has not breached

19    an express covenant of the insurance contract. *See Deese v. State Farm Mut. Auto. Ins.*

20    *Co.*, 838 P.2d 1265, 1270 (Ariz. 1992).

21        An insured alleging a bad faith claim against his insurer must show (1) the insurer

22    acted unreasonably and (2) the insurer knew or recklessly disregarded the fact that its

23    conduct was unreasonable. *Zilisch*, 995 P.2d at 280 ¶ 22; *Noble*, 624 P.2d at 868. "The

24    first prong of the test for bad faith is an objective test based on reasonableness. The

25    second prong is a subjective test, requiring the plaintiff to show that the defendant

26    insurance company committed consciously unreasonable conduct." *Milhone v. Allstate*

27    *Ins. Co.*, 289 F. Supp. 2d 1089, 1094 (D. Ariz. 2003) (citing *Trus Joist Corp. v. Safeco*

28    *Ins. Co.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1986)).

1    In *Zilisch*, the Arizona Supreme Court confirmed that two types of insurer

2    misconduct may give rise to a bad faith claim. First, an insurer may be liable for bad faith

3    if it denies a claim that was not fairly debatable. *Zilisch*, 995 P.2d at 280 ¶ 22; *see also*

4    *Deese*, 838 P.2d at 1269. The question of whether an insurer believed the claim to be

5    fairly debatable is generally a fact question for the jury, although a court may rule on the

6    issue as a matter of law "[i]f the plaintiff offers no significantly probative evidence that

7    calls into question the defendant's belief in fair debatability." *Young v. Allstate Ins. Co.*,

8    296 F. Supp. 2d 1111, 1116 (D. Ariz. 2003); *see also Bronick v. State Farm Mut. Auto.*

9    *Ins. Co.*, 2013 WL 3716600, at *6 (D. Ariz. July 15, 2013).

10    Second, an insurer is liable for bad faith if it acted unreasonably in processing a

11    claim, regardless of the claim's merits. *Zilisch*, 995 P.2d at 280 ¶ 22 ("[I]f an insurer acts

12    unreasonably in the manner in which it processes a claim, it will be held liable for bad

13    faith 'without regard to its ultimate merits.'" (quoting *Deese*, 838 P.2d at 1270)). Thus,

14    an insurer commits bad faith if during the "investigation, evaluation, and processing of

15    the claim, the insurer acted unreasonably and either knew or was conscious of the fact

16    that its conduct was unreasonable." *Id.*

17    **B.    Analysis**

18    One basis for Plaintiffs' bad faith claim is that American Family wrongfully

19    attempted to "recapture depreciation on air conditioning units that had already been

20    settled." (Doc. 54 at 14). This claim is predicated on alleged discrepancies in American

21    Family's calculation of its payments before and after Getty issued its report. After Falcon

22    Air inspected Plaintiffs' property and issued its report, American Family paid Plaintiffs

23    based upon a replacement cost value of $10,573 for the air conditioning units less

24    recoverable depreciation of $2,809. (Doc. 49-1 at 127). Following Getty's report,

25    American Family issued a second payment to Plaintiffs that, although it adjusted for the

26    previous payment, changed the amount of recoverable depreciation for the air

27    conditioning units to $5,190.50. (*Id.* at 143).

28    American Family offers evidence showing that its first estimate erroneously

calculated depreciation upon only one of the two air conditioning units being replaced. The documentation for that estimate shows that of the $10,573 in total air conditioning replacement costs, $5,618 was allocated to the first unit less depreciation of $2,809. (*Id.* at 128). The second unit had a replacement cost of $4,673 but depreciation was listed as $0. (*Id.*) In the supporting documentation for American Family's second payment, the second unit is listed as having depreciation of $2,381.50. (Doc. 55-5 at 7). American Family claims that the second estimate corrected the mistakenly-omitted depreciation from the first estimate. (Doc. 56 at 3).

However, at the summary judgment stage the Court draws all reasonable inferences in the light most favorable to the non-movant. Although a jury may ultimately accept American Family's explanation for the discrepancy, viewing the inferences in the light most favorable to Plaintiffs, the reason for American Family's depreciation adjustment is a question of fact for the jury. This is particularly so because American Family had previously denied Plaintiffs an extension of the requirement that repairs be completed within one year from the date of loss. (*Id.* at 55-56). Because the date of loss in this case is October 5, 2010, the effect of American Family's adjustment to recoverable depreciation was thus to permanently reduce the value of Plaintiffs' claim.[7]

American Family may have a legitimate, reasonable explanation for this discrepancy but on the present record the Court cannot conclude as a matter of law that American Family is entitled to summary judgment.[8] Plaintiffs have shown sufficient evidence from which a reasonable juror could conclude that American Family knew that its processing of Plaintiffs' claim was unreasonable.

---

[7] Recoverable depreciation is recoverable by the insured only if the insured actually completes and pays for repairs. *See Rosenblum v. Safeco Ins. Co.*, 24 Cal. Rptr. 3d 427, 430 n.4 (Ct. App. 2005).

[8] American Family contends that Plaintiffs' inability to collect recoverable depreciation is not evidence of unreasonable claim processing. (Doc. 56 at 6). But the sudden increase in the amount of recoverable depreciation over a five-month span when American Family knew that Plaintiffs could not collect this amount could be evidence of unreasonable claim processing, at least for purposes of summary judgment.

## VI.   Punitive Damages

American Family moves for summary judgment on Plaintiffs' claim for an award of punitive damages on Plaintiffs' bad faith claim. (Doc. 48 at 16). American Family argues that Plaintiffs have failed to show American Family acted with the requisite intent to support an award of punitive damages. (*Id.*)

### A.   Legal Standard

Although an award of punitive damages is available in claims for insurance bad faith, it is available only in "those cases in which the defendant's wrongful conduct was guided by evil motives." *Rawlings*, 726 P.2d at 578. The insured must prove that the insurer's "evil hand was guided by an evil mind," which may exist when the insurer intended to injure the insured or when the insurer "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.* The insurer's conduct must have been "aggravated, outrageous, malicious or fraudulent." *Id.* "Indifference to facts or failure to investigate are sufficient to establish the tort of bad faith but may not raise to the level required by the punitive damage rule." *Id.*

### B.   Analysis

In this case, none of American Family's actions rise to a level justifying punitive damages. Considering all of the evidence and reasonable inferences in the light most favorable to Plaintiffs, Plaintiffs have established a question of fact as to whether American Family acted in bad faith. Plaintiffs have not, however, pointed to an iota of evidence from which a jury could infer that American Family acted with an evil mind. At best, Plaintiffs can show that American Family's estimates were inaccurate, incompetent, and unreasonable. This may establish a bad faith claim.

Plaintiffs have many complaints with American Family's claims process: the sharp increase in recoverable depreciation, failure to include payment for general contractor overhead and profit despite internally acknowledging that it was owed, *see* (Doc. 49-1 at 37), the suggestion that replacement roof tiles may be available on the internet, and use of an adjuster with little experience. Some of these complaints do not justify an inference in

favor of bad faith, much less punitive damages. For example, although Plaintiffs repeatedly crusade against American Family "demand[ing] that Plaintiff attempt to find [replacement tiles] on Craigslist," (Doc. 54 at 3), American Family made no such demand. Instead, American Family noted in its internal claim notes:

> I suspect the next argument is that this tile is not available. The contractor will need to check Craigslist in the Phoenix area for compatible tiles. Also ABC supply of glendale [sic] may be able to get new tiles from Californa [sic] if these are Monier or Lifetile shingles. The [sic] need to ask for the BORAL brand.

(Doc. 49-1 at 40). This is not evidence of an evil mind, merely a rational one. Nor do American Family's actions with respect to contractor overhead and profit constitute such evidence. *See* (Doc. 49-1 at 37).

No reasonable juror could conclude from the evidence that American Family acted with an evil mind justifying punitive damages. Accordingly, the Court will grant summary judgment for American Family on the issue of punitive damages.

**VII.   Conclusion**

The Court finds that questions of fact for the jury exist on Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs are not entitled to an award of punitive damages, however, because that claim fails as a matter of law.

For the foregoing reasons,

**IT IS ORDERED** granting in part and denying in part American Family's Motion for Partial Summary Judgment (Doc. 48).

Dated this 1st day of July, 2014.

James A. Teilborg
Senior United States District Judge